## BOWIE SEWERAGE CO. v. CHANDLER.

### No. 4882.

Court of Civil Appeals of Texas. Amarillo.

April 11, 1938.

Rehearing Denied May 23, 1938.

840

Bond & Porter, of Terrell, for appellant.

T. B. Coffield, of Bowie, for appellee.

FOLLEY, Justice.

This is a suit for damages by the plaintiff below, W. W. Chandler, a person of unsound mind, acting through his next friend, Webb Case, against the defendant below, the Bowie Sewerage Company, for injuries to plaintiff's land and to the health of plaintiff's wife, Mrs. Lizzie Chandler.

The plaintiff is the owner of 147 acres of land about three miles southwest of the town of Bowie which he has owned since 1907. Jones Creek traverses this land within a short distance of the home of plaintiff. Above plaintiff's premises about a mile is a tract of land owned by the defendant. Upon this tract the defendant maintains and operates a large septic tank for the disposal of sewage flowing down the sewer from the town of Bowie. The septic tank was constructed, and placed in operation by the defendant, in 1913. As first operated the sewage was collected into the septic tank, and, after going through some sort of settling process, was released upon the land of the defendant for irrigation purposes, a part of which found its way by an open earth ditch into Jones Creek. At a date not definite from the testimony, but presumably about 1920, the defendant laid some loose tile in the earth ditch and thereafter carried a larger portion of the disposed sewage into Jones Creek. At this time the joints of the tile were not cemented, and, being loosely constructed, part of the sewage was still released upon defendant's land. In September, 1925, this loose tile was replaced by a cemented tile line which thereafter emptied all the sewage into Jones Creek from the septic tank. A part of this sewage passed on down the creek and across plaintiff's premises.

The plaintiff alleged, and offered testimony tending to prove, that the filth and waste matter from defendant's plant created a discoloration of the creek bottom over plaintiff's premises and produced highly offensive and unhealthful odors from which the damages arose to his land and to the health of his wife.

The case was tried before a jury upon special issues, resulting in a judgment for the plaintiff for the sum of $2,200, of which amount $1,470 was found as damages to the land, and $730 as damages by reason of injuries to the health of plaintiff's wife. From this judgment the defendant has appealed to this court.

The defendant first complains of the failure of the trial court, in his charge, to define the term "reasonable market value" in connection with the issues involving the alleged damages to the land. In conformity to the pleading and proof of the plaintiff, the court submitted two issues to the jury to determine the depreciation in the market value of the land occasioned by the alleged wrongful conduct by the defendant. These two issues inquired of the jury the reasonable market value of plaintiff's place just before and immediately after the alleged injury. The answers to these issues resulted in the sum of $1,470 as the depreciation in the value of the land. The defendant duly excepted to the omission from the court's charge of the definition of "reasonable market value" and requested the court to give a proper definition of such term. Such objection and request were overruled by the court, which action forms the basis of this assignment.

That the above term is a legal term with a well-defined meaning is, we think, beyond controversy. The failure of a trial court to properly define such a term in similar situations has been held to constitute reversible error in many instances. Tidal Western Oil Corporation v. Blair, Tex.Civ.App., 39 S.W.2d 1103; Texas Pipe Line Co. v. Bridges, Tex.Civ.App., 39 S.W. 2d 1109; Dickens County v. Dobbins et al., Tex.Civ.App., 95 S.W.2d 153; Panhandle & S. F. Ry. Co. v. Burt et al., Tex.Civ.App., 50 S.W.2d 922; Texas Pipe Line Co. v. Watkins et al., Tex.Civ.App., 26 S.W.2d 1103; Robertson & Mueller v. Holden, Tex. Com.App., 1 S.W.2d 570. We have been unable to find any case in this state holding, upon proper exception, that the omission

of such definition was not error in a situation similar to the one herein involved. The plaintiff, in defending the court's action in this connection, relies upon the case of Runnels Chevrolet Co. et al. v. Clifton et al., Tex.Civ.App., 46 S.W.2d 426, and the case of Graham-Brown Shoe Co. v. Snodgrass, Tex.Civ.App., 257 S.W. 632. Neither of these cases violates the rule announced in the authorities first cited. On the contrary, they expressly approve the rule, but due to the peculiar circumstances in each of the cases it was held that the error therein was harmless. The plaintiff contends that due to the peculiar circumstances in the instant case this rule should not be applied. In this connection he asserts that the only testimony in regard to the market value of the land was from the witness Will Stewart, who testified that the land was worth $20 per acre before the injury and $10 per acre after the injury. The jury, in answer to the issues, fixed these exact values on the land. Such being the state of the record, the plaintiff contends that the value of the land was not a controverted issue and any error in the omission of such definition was harmless. In this we cannot agree with the plaintiff. In the first place, the testimony of Will Stewart is not the only testimony in the record in regard to such values. George Teague, a witness for the plaintiff, testified, in his opinion, the land before the injury was worth from $18 to $22 per acre. Since he could not qualify as to his knowledge of the value of the land immediately after the alleged injury, he was not permitted to express his opinion on the latter value, but his testimony as to the former value was before the jurors in their deliberation. Granting that there was no testimony as to values except that of Stewart, such fact, in our opinion, would not render the error harmless. On the issue of value the jury was not bound to adopt the estimate of Will Stewart or any other witness, though such testimony might be uncontradicted. Buchanan v. Bowles, Tex. Civ.App., 218 S.W. 652; Houston Belt & Terminal Ry. Co. v. Vogel et ux., Tex.Civ. App., 179 S.W. 268, writ refused; Rogers & Adams v. Lancaster et al., Tex.Com.App., 248 S.W. 660.

■ In all such cases the jurors are given some discretion in the matter, and especially is this true with reference to the credibility of the witnesses and the weight to be given their testimony. On this question, from the Vogel Case, supra, we quote:

"The witnesses testified at length as to their knowledge of property values and as to their methods of arriving at the market value of plaintiffs' property both before and after the construction and operation of defendant's railroad; and it was a matter peculiarly within the province of the jury to weigh the testimony, judge the credibility of the witnesses, and to reach a conclusion supported by testimony to which they gave credence, or a conclusion reached by blending all the evidence admitted before them, aided by their own experience and knowledge of the subject of inquiry."

■ In order that the jurors, in the instant case, might have reached a correct conclusion as to the values of the land in question, in the light of the above authorities, it is our opinion that the court should have given them a proper measuring rod to use in reaching such conclusions. As the matter now stands, we have no way of ascertaining what measurement they used or what erroneous methods they employed. The purpose of the definition of the term involved is to keep the jurors within correct legal bounds in arriving at such values, and we think the absence of such definition in this case was reversible error.

The defendant also complains of the refusal of the court to submit its specially requested issue as follows: "Has the defendant shown by a preponderance of the evidence that the injury to the health of Mrs. Lizzie Chandler, if any, was caused by malaria fever?" Plaintiff's damage on account of the injuries to his wife's health was predicated on both allegations and proof that the discharged sewage from defendant's disposal plant had created offensive odors and disease germs upon plaintiff's premises in such manner that the health of his wife had become materially impaired. Sufficient issues were submitted by the court to present plaintiff's theory in this respect. Such issues inquired of the jury if Mrs. Chandler's health had been injured, if such injury was proximately caused by the manner in which the defendant operated its disposal plant, and further inquired as to the amount of damages proximately caused by the defendant in such connection. The first two of these issues were answered in the affirmative, and in the third the jury fixed the damages at $730. The defendant asserts that the testimony raised the issue as above requested as an affirmative defense to plaintiff's cause of action in this respect. It is our opinion

that the pleadings of the defendant were sufficient to warrant the submission of the issue if the testimony raised such an issue. Therefore, we must determine whether or not the testimony was sufficient to warrant such defensive issue.

In this connection the defendant relies mainly upon excerpts from the testimony of Dr. J. D. Wilson, a witness for the plaintiff, which are as follows: "The condition of Mrs. Chandler's health at the present time, is, she is just a nervous wreck. What I mean by nervous wreck, she is so nervous, she can't do anything hardly. In my opinion, the cause of that nervousness is so many little spells of sickness. The kind of sickness is just having fever and having to go to bed for several days. I have called to treat her during those times. The nature of my treatment was a general anti-malarial treatment to fight fever. The effect of that was to put her in bed. As to her present condition and the permanency of it, being sick so many times that would make a permanent thing almost. * * * The fever I spoke of, the cause of that is a malarial condition, malaria is only caused by mosquitoes. The mosquito must get the germ from somebody that is infected. * * * The nervousness was caused primarily by the malarial fever and the continued sickness. She was never very robust, but she was in good health, but never robust. * * * I don't say that the malarial condition has been caused by the odors of the creek. She had fever, that was malarial fever she has. Principally, I gave her anti-malarial treatment."

▮▮▮ It is our opinion that the above testimony was sufficient to raise the issue requested by the defendant. It is apparent that if the injury to the health of Mrs. Chandler was caused by malarial fever, under the above testimony, it could not have been caused by the defendant. Dr. Wilson's testimony established the fact that malarial fever is transmitted by mosquitoes, not from a polluted creek, but from an infected person by means of a disease germ. If the issue requested had been submitted and the jury had answered it in the affirmative, such issue, standing alone, would have been a complete defense to that portion of plaintiff's cause of action seeking damages for injuries to his wife's health. Moreover, an affirmative finding upon such issue, when considered in connection with the other findings of the jury, would have produced an irreconcilable conflict upon which find-

ings the court could not have rendered a valid judgment. In either event, the causal connection between defendant's alleged wrongful conduct and the damages sought would have been broken. The burden was upon the plaintiff to establish such causal connection. The plaintiff asserts one theory as the cause of the damages and the defendant asserts another. Both theories are supported by the pleadings and the testimony. The court submitted plaintiff's theory but rejected the defendant's. Although the question is not raised, we recognize the fact that the requested issue, upon proper exception, may have been erroneous in form in that its language revealed to the jury upon whom the burden of proof was placed (Wootton et ux. v. Jones et al., Tex.Civ. App., 286 S.W. 680; Traders & General Ins. Co. v. Milliken, Tex.Civ.App., 110 S. W.2d 108), yet we think such requested issue was sufficient to call the court's attention to the matter involved. The defendant having made such a request, it became the duty of the court to properly present such defense for the consideration of the jury. We, therefore, sustain this assignment. Fox et al. v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517; Thurman et al. v. Chandler et al., 125 Tex. 34, 81 S.W.2d 489; H. W. Broaddus Co., Inc. v. Brinkley et al., 126 Tex. 374, 88 S.W.2d 1040; Texas Power & Light Co. v. Culwell et al., Tex. Com.App., 34 S.W.2d 820; Elliott-Greer Office Supply Co. v. Martin, 126 Tex. 112, 86 S.W.2d 635; Commercial Standard Ins. Co. v. Noack, Tex.Com.App., 62 S.W.2d 72; Horton & Horton v. House, Tex.Com.App., 29 S.W.2d 984.

We have carefully considered the other assignments of error herein, and we are of the opinion that such alleged errors, as presented, are without merit.

For the errors discussed, the judgment is reversed and the cause remanded.

## On Motion for Rehearing.

▮▮▮ We deem it necessary to discuss briefly some argument advanced by the plaintiff in his motion for rehearing herein in connection with our holding that defendant's defensive theory as outlined in our original opinion should have been submitted to the jury. The plaintiff contends that such theory was adequately submitted in special issue No. 17 of the court's main charge, which was as follows: "Was the injury to the health of Mrs. Lizzie Chandler, if any, caused and occasioned by any

other cause than the manner in which the defendant operated its disposal plant?"

If the jury had answered issue No. 17 in the negative there would have been more merit to plaintiff's contention. But the jury answered the issue in the affirmative. Such a response does not exclude the defendant's theory that malarial fever was the cause of Mrs. Chandler's ill health. On the contrary, it establishes definitely that some agency other than the alleged misconduct of the defendant was a factor in bringing about the injury to the health of Mrs. Chandler.

In defense of the court's failure to submit the theory of malarial fever as being the source of Mrs. Chandler's injuries, the plaintiff contends that if such theory had been submitted and the jury had answered the issue favorably to the defendant, it would have done no more than establish another proximate cause of the injury alleged, which would not have affected the results of the verdict in this case as there might have been more than one proximate cause of an injury. In our opinion, in view of the language of the special issue requested by the defendant, such a finding would have established more than a proximate cause. It would have established a sole cause of the injury, which would have been in direct conflict with the other findings favorable to the plaintiff, and, as we held in our original opinion, it would have produced an irreconcilable conflict in the findings of the jury upon which the court could not have rendered a valid judgment.

The motion for rehearing is overruled.