Easter 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-91-054-CV





ROBERT H. WATKINS, AND WIFE, SHARON K. WATKINS,



 APPELLANTS


vs.





FRED B. EASTER, AND WIFE, DEBORAH J. EASTER,



 APPELLEES



 




FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT



 NO. 89-393-C368, HONORABLE BURT CARNES, JUDGE PRESIDING






 




 This contract dispute involves the sale of a residence in 1987. The Easters
defaulted in 1989 and vacated the property in 1990, causing the Watkinses to bring an action for
breach of contract and two actions for common law fraud, alleging false promises and false
representation or concealment of material facts. The Easters then counterclaimed, alleging bad
faith and unfair dealing, unjust enrichment and deceptive trade practices. After a trial to the jury,
the court rendered a take-nothing judgment against both sides. The Watkinses now appeal. We
will affirm the trial court's judgment.



BACKGROUND


 Robert and Sharon Watkins [Appellants] owned a residence in Round Rock, which
Fred and Deborah Easter [Appellees] contracted to buy in 1987. Much of this dispute can be
traced to the unconventional terms found in the parties' contract of sale. The Easters were to
make monthly payments to the Watkinses; those payments were to be applied first to one-twelfth
of the annual cost of taxes and insurance on the property, next to a portion of the interest, and
finally to principal. Interest on some of the principal was to be paid at ten percent, interest on
some of the principal was "waived," and interest on the remaining principal balance was to
accumulate at six percent and be added to principal at the end of the first year, when the entire
principal balance was due and payable. The Easters were not to receive a deed until they paid the
full consideration. 

 In November 1988 the parties orally amended the contract to extend the due date
for payment of the "balloon note." In exchange for this extension, the Easters agreed to increase
their monthly payments from $800 to $1125 while they allegedly pursued permanent financing that
would enable them to assume the Watkinses' indebtedness on the residence. In July 1989 the
Easters stopped making payments; they vacated the property in February 1990. 

 The Watkinses brought an action for breach of contract to recover the benefit of
their bargain, which they asserted to be the difference in the contract price of the house in 1987
($107,500) and its fair market value when they regained possession in 1990. They also brought
a tort action alleging that the Easters made false representations and concealed material facts
regarding their creditworthiness. In addition, the Watkinses sought attorney's fees for defending
groundless counterclaims. 

 The jury found that the Easters breached the contract of sale but failed to find that
the Watkinses suffered damages from the breach. It also found that the Easters made false
representations and concealed material facts, causing Mr. Watkins to suffer $500 damages for
mental anguish. The jury also found that the Watkinses were entitled to exemplary damages,
which may only be recovered if actual damages flowed from the Easters' tortious behavior. 

 Both parties asked the court to disregard certain jury findings and to render
judgment on the verdict; and in the alternative, defendants asked for judgment notwithstanding
the verdict. The trial court: (1) ruled that the Easters' counterclaims were not groundless,
depriving the Watkinses of any entitlement to attorney's fees; (2) entered a take-nothing judgment
against both sides; and (3) ordered the Easters to pay $250 to the Watkinses as sanctions for
discovery abuses. The Watkinses challenge the judgment in ten points of error.

 


CONTRACT DAMAGES

 In their first four points of error, the Watkinses complain of the court's refusal to
disregard the jury's failure to find that they suffered damages from the Easters' breach of the
contract of sale. The first three points address the property's diminished value in 1990, when the
Watkinses regained possession; the Watkinses maintain that they have proved diminished value
as a matter of law, or in the alternative, that a failure to find any damages is against the great
weight and preponderance of the evidence. In point of error four, the Watkinses argue that
damages should be measured alternatively by the difference between the payments required under
the contract and the payments actually received. The Watkinses maintain that they proved these
damages as a matter of law, or, in the alternative, that the jury's failure to assess damages was
contrary to the great weight and preponderance of the evidence. 

 To establish as a matter of law that they suffered damages from the breach, the
Watkinses must first demonstrate on appeal that the evidence conclusively established all vital 
facts in support of the issue. See Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). 
We apply a two-step process to overcome, as a matter of law, adverse jury findings on which
appellant had the burden of proof: (1) examine the record for evidence that supports the verdict,
ignoring all evidence to the contrary; if there is no evidence to support the fact finder's answer,
then (2) examine the entire record to see if the contrary position is established as a matter of law. 
Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982).

 At trial, the Watkinses argued that their damages after regaining possession should
be measured by the property's substantial decline in value between 1987 and 1990. Their expert
witness testified that as of February 1990 the property's value had declined to $74,000. The
Easters' countervailing argument, that the house had substantially the same value in 1990 as it had
in 1987, was apparently more persuasive. 

 On appeal, the Watkinses appear to argue that because they presented the only
expert testimony of the property's value in February 1990, the trial court erred by failing to
disregard the jury's contrary finding. The jury could reject the testimony of the Watkinses'
appraiser, even if it was not contradicted. Kansas City Fire & Marine Ins. Co. v. Duncan, 330
S.W.2d 469, 471 (Tex. Civ. App. 1959, no writ).

 Appellants complain that because the Easters introduced no direct evidence of the
property's value in February 1990, expert or otherwise, there is no evidence to support the jury's
failure to find that the house had substantially diminished in value at the time the Watkinses
regained possession. We disagree.

 There is evidence in the record to support the jury's failure to find that the
Watkinses suffered damage from the property's diminished value. The parties stipulated that the
rental value of the house remained $850 per month from August 1987 to February 1990
(Stipulation No. 3). Rental value directly impacts the income approach to estimating a property's
fair market value. The parties' stipulation that the rental value of this property remained constant
is some evidence that the property did not lose its value. 

 The stipulation regarding the property's rental value is sufficient evidence to
support the jury's failure to find that the Watkinses suffered damages from the breach of this
contract. Because the record contains some evidence in support of the jury's verdict, appellant
cannot establish damages as a matter of law. Furthermore, we cannot say that the jury's failure
to find any damage is against the great weight and preponderance of the evidence. 

 We turn to the Watkinses' alternative measure of damages, payments due under the
contract less payments received, a measure that they also maintain was proved as a matter of law. 
Whether such figures were proved as a matter of law is immaterial because this is not a proper
measure of damages in real estate transactions. The universal rule for measuring damages for
breach of contract is just compensation for loss or damage actually sustained. Stewart v. Basey,
245 S.W.2d 484, 486 (Tex. 1952). Points of error one through four are overruled.



TORT DAMAGES

 In their fifth and sixth points of error, the Watkinses argue that the trial court erred
in entering a take-nothing judgment because the jury found they were entitled to mental anguish
damages and exemplary damages on their common law fraud claims. In order to award exemplary
damages, there first must be a finding of actual damages. Nabours v. Longview Sav. & Loan
Ass'n, 700 S.W.2d 901, 903 (Tex. 1985). We are left with two issues: (1) have the Watkinses
prevailed on their common law fraud action; and if so, (2) were mental anguish damages properly
awarded and are they actual damages in support of exemplary damages? We need not decide
whether mental anguish damages can support an award of exemplary damages because we find
that they were improperly awarded. The Watkinses failed to satisfy all the elements of common
law fraud.

 A cause of action for common law fraud has the following elements:



(1) that a material representation was made; (2) that it was false; (3) that when the
speaker made it he knew it was false or made it recklessly without any knowledge
of the truth and as a positive assertion; (4) that he made it with the intention that
it should be acted upon by the party; (5) that the party acted in reliance upon it;
and (6) that he thereby suffered injury.



Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 185 (Tex. 1977).

 The Watkinses failed to prove that the Easters made an intentional
misrepresentation. The Easters asked the court to disregard the jury's finding of "actual
awareness" in Question #15, arguing that if the jury did not find the mental state of "knowingly,"
as it was defined in Question #16, then there could be no "actual awareness" in response to
Question #15. The Easters argued that without a showing that they acted knowingly or
intentionally, the Watkinses were not entitled to recover for misrepresentation, and thus were not
entitled to exemplary damages. We agree. When jury findings appear to conflict, the trial court
may disregard such conflict because a specific finding should be held to dominate a finding which
is so general as to constitute a legal conclusion. Williams v. Williams, 559 S.W.2d 888, 894
(Tex. Civ. App. 1977, writ ref'd n.r.e). The term "actual awareness" was not defined for the
jury, whereas, "knowingly," "intentionally," and "recklessly" were. We hold that the jury's
answer to Question #16, that the Easters did not act intentionally or knowingly, dominates the
finding in Question #15, that the Easters had "actual awareness" of false actions or concealments. 
Without knowledge or intent to defraud, an action for common law fraud will not lie. Because
the Watkinses failed to prove their claim of common law fraud, mental anguish damages are
inappropriate, as are exemplary damages. Points of error five and six are overruled.



COUNTERCLAIMS NOT GROUNDLESS 

 In points of error seven, eight and nine, the Watkinses allege that the trial court
erred in denying their motion for judgment because the Easters' counterclaims for breach of
contract and violations of the Deceptive Trade Practices-Consumer Protection Act (DTPA) (Tex.
Bus. & Com. Code Ann. §§ 17.41-17.826 (1987 & Supp. 1992)) were groundless. The trial court
issued findings of fact and conclusions of law stating that the Easters' claims had a basis in law
and fact. We agree.

 The Easters brought their counterclaims for breach of contract and DTPA violations
premised upon their reading of the Contract for Sale. The provision in question reads, "When
this contract of sale has been cancelled for non-payment if need be by the Seller, the only question
to be determined is that of possession." Mr. Easter testified that he read this provision as an
exclusive remedy in the event of default: he would lose the house and all payments made prior
to default. The Watkinses instead brought suit for damages and specific performance; the Easters
counterclaimed, alleging the Watkinses' actions constituted "representations that the agreement
involved rights, remedies, and obligations which it did not have or involve," violating DTPA §
17.46(b).

 We find that Mr. Easter's reading of the contract was not only plausible, but a
legally correct interpretation of what can only be deemed a contract for deed. The Easters could
well have prevailed on their counterclaims. As the Easters correctly point out, "groundless"
under the DTPA has the same meaning as "groundless" under Rule 13 of the Texas Rules of Civil
Procedure: "[N]o basis in law or fact and not warranted by good faith argument for the extension,
modification or reversal or existing law." Donwerth v. Preston II Chrysler-Dodge Inc., 775
S.W.2d 634, 637 (Tex. 1989); Tex. R. Civ. P. Ann. 13 (Supp. 1992). Every litigant who fails
to persuade the fact finder is not necessarily subject to sanctions for bringing a groundless law
suit. We hold that the Easters' claims were not groundless, and therefore overrule points of error
seven through nine.



SPECIFIC PERFORMANCE NOT APPROPRIATE

 The Watkinses' final point of error alleges that the trial court abused its discretion
in denying specific performance of the contract. Specific performance is warranted where the
remedies at law are inadequate. Guzman v. Acuna, 653 S.W.2d 315, 318 (Tex. App. 1983, writ
dism'd). However, specific performance is an equitable remedy and the equities of both parties
must be protected. Johnson v. Downing & Wooten Constr. Co., 480 S.W.2d 254, 258 (Tex. Civ.
App. 1972, no writ). Further, specific performance is a matter resting in the court's discretion. 
Magram v. Lewis, 618 S.W.2d 420, 422 (Tex. Civ. App. 1981, no writ). Keeping in mind that
previous events had shown the financial inability of the Easters to maintain payments on the
contract, we cannot say the trial court abused its discretion in not requiring them to complete the
contract. We overrule the tenth point of error.

 We affirm the judgment of the trial court.



 

 Bea Ann Smith, Justice

[Before Chief Justice Carroll, Justices Aboussie and B. A. Smith]

Affirmed

Filed: April 22, 1992

[Do Not Publish]